## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|                          |   |                                                                 |
|--------------------------|---|-----------------------------------------------------------------|
| In Re:                   | : | Chapter 11                                                      |
|                          | : |                                                                 |
| EFL PARTNERS X,          | : | Case No. 13-11495-MDC                                           |
|                          | : |                                                                 |
| Debtor.                  | : | **Hearing Date and Time: 5/7/13 at 11:00 a.m.**                 |
|                          | : | **Location: Courtroom 5, US Bankruptcy Court**                  |
|                          |   | **Robert N.C. Nix Sr. Federal Courthouse**                      |
|                          |   | **900 Market Street**                                           |
|                          |   | **Philadelphia, PA 19107**                                      |

### MOTION OF LIBERTY RE ASSETS HOLDINGS, LLC AND LIBERTY PHILADELPHIA REO, LP FOR (I) RELIEF FROM AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362  OR, ALTERNATIVELY, FOR  (II) DISMISSAL OF CHAPTER 11 PROCEEDINGS PURSUANT TO 11 U.S.C. § 1112

Liberty RE Assets Holdings, LLC ("Liberty Holdings") and Liberty Philadelphia REO, LP ("Liberty REO" and, together with Liberty Holdings, "Liberty"),[1] by and through their undersigned attorneys, hereby move, pursuant to § 362(d) of title 11 of the United States Code (11 U.S.C. § 101 *et seq.* as amended, the "Bankruptcy Code"), for relief from the automatic stay to exercise all rights and remedies against the above captioned debtor (the "Debtor") and certain condominium units located at 908-910 Spruce Street, Philadelphia, Pennsylvania or alternatively, pursuant to section 1112(b) of the Bankruptcy Code, for the entry of an order dismissing the above-captioned bankruptcy case (the "Chapter 11 Case").  In support hereof, Liberty respectfully states as follows:

### JURISDICTION AND VENUE

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is appropriate in this Court pursuant to 28 U.S.C. § 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(H).

---

[1] Liberty REO is a limited partnership of which Liberty Holdings is the general partner.  Because the two entities function together as a single economic unit, they will be referred to jointly as "Liberty" hereinafter, except where the context requires that they be separately identified.

2.      The statutory predicates for the stay relief sought herein are §§ 105(a) and 362(d) of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The statutory predicates for dismissal of the Chapter 11 Case as sought herein are §§ 105(a) and 1112(b) of the Bankruptcy Code and Bankruptcy Rule 1017.

## BACKGROUND

3.      On February 21, 2013 (the "Petition Date"), the Debtor filed a voluntary petition for relief (the "Petition") under Chapter 11 of the Bankruptcy Code, for the admitted purpose of obstructing Liberty's efforts to liquidate a judgment entered in a state court proceeding.[2]  The Debtor filed an amended petition (the "Amended Petition") on March 21, 2013.  The Debtor also filed its Schedules and Statement of Financial Affairs (collectively, the "Schedules") on March 21, 2013.  (*See* ECF Nos. 18 & 22).

4.      The Debtor is presently operating its business and managing its properties as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No Chapter 11 trustee, examiner, or creditor's committee has been appointed as of the filing of this Motion.

5.      The Debtor is the owner of certain condominium units located at 908-910 Spruce Street, Philadelphia, PA 19107 (the "Spruce Street Property").  (*See* ECF No. 22, Schedule A). The Spruce Street Property consists of two connected buildings, each containing six condominium units, collectively numbered units one (1) through twelve (12).  The Debtor owns the following condominium units at the Spruce Street Property: one (1), three (3), five (5), six (6), seven (7), eight (8), nine (9), eleven (11) and twelve (12) (collectively, the "Units").  (*See* ECF No. 22, Schedule A).

---

[2] John Kontra, President of the Debtor's general partner, EFL Holdings, Inc., testified on behalf of the Debtor at the first meeting of creditors on March 19, 2013 that the purpose of its bankruptcy filing was to avoid Liberty's execution on its Deficiency Judgment (defined *infra*).

#18049125 v7

### The Notes to Republic First Bank

6.        On or about November 18, 2005, the Debtor and its affiliate, EFL Partners V

("EFL V"), borrowed the principal sum of $7,406,500.00 (the "Loan") from Republic First Bank

("Republic First").  The Loan was evidenced by that certain promissory note, dated November

18, 2005, executed by both Debtor and EFL V (the "Original Note").  The Original Note was

subsequently amended by an Allonge dated June 30, 2008 (the "First Allonge"), increasing the

principal amount of the Loan to $7,856,520.00.  The Original Note and the First Allonge were

further amended by an Allonge dated November 3, 2008 (the "Second Allonge" and, together

with the Original Note and the First Allonge, the "Note").  The Second Allonge increased the

principal amount of the Note to $9,527,120.00.[3]

### The Mortgages on Debtor's Condominium Units

7.        On or about November 18, 2005, to secure its obligations under the Note, the

Debtor executed the Open-End Mortgage and Security Agreement (the "First Mortgage"),

whereby the Debtor granted Republic First a lien on Units five (5), six (6), seven (7), nine (9)

and twelve (12) at the Spruce Street Property, including without limitation all buildings,

improvements, fixtures, personalty, plans, leases, rents and property agreements.  Republic First

properly perfected the First Mortgage by filing and recording it with the Commissioner of

Records of the City of Philadelphia.[4]

8.        On or about June 30, 2008, as further security for its obligations under the Note,

the Debtor executed the Open-End Mortgage and Security Agreement (the "Second Mortgage"),

whereby the Debtor granted Republic First a lien on Units one (1) and three (3) at the Spruce

---

[3] True and correct copies of the Original Note, First Allonge, and Second Allonge are attached hereto as **Exhibit A,
Exhibit B,** and **Exhibit C**, respectively.

[4] A true and correct copy of the First Mortgage is attached hereto as **Exhibit D**.

Street Property, including without limitation, all buildings, improvements, fixtures, personalty, plans, leases, rents and property agreements with regard to such Units.[5]

9.      On or about November 3, 2008, as further security for its obligations under the Note, the Debtor executed and delivered the Open-End Mortgage and Security Agreement (the "Third Mortgage"), whereby the Debtor granted Republic First a lien on Units eight (8) and eleven (11), including without limitation, buildings, improvements, fixtures, personalty, plans, leases, rents and property agreements with regard to such Units.  Republic First properly perfected the Third Mortgage by filing and recording it with the Commissioner of Records of the City of Philadelphia.[6]  In addition, the Debtor executed three separate Assignments of Rents and Leases, pursuant to which Debtor granted Republic First an absolute assignment of all rents, leases and profits from the Units to which the First, Second and Third Mortgages attach (the "Assignment of Rents").  Republic First properly perfected the Assignment of Rents by filing them with the Philadelphia Commissioner of Records.[7]

**The Mortgages on EFL V's Properties**

10.     The Debtor's and EFL V's obligations under the Note were secured by liens not only on Debtor's property, but also by liens on certain real property owned by the Debtor's affiliate EFL V.  Specifically, EFL V granted Republic First mortgages (the "EFL V Mortgages") on that certain real estate located at 18-22 South Letitia Street and 31-33 South Second Street, Philadelphia, Pennsylvania (collectively, the "EFL V Properties").  Republic First

---

[5] A true and correct copy of the Second Mortgage is attached hereto as **Exhibit E.**

[6] A true and correct copy of the Third Mortgage is attached hereto as **Exhibit F**.

[7] Copies of the Assignments of Rents are appended hereto as **Exhibit G.**

#18049125 v7

also properly perfected these mortgages by filing them with the Philadelphia Commissioner of Records.

## The Mortgage Modification Agreements

11.     On or about November 3, 2008, Republic First and the Debtor entered into those certain Mortgage Modification Agreements (the "Mortgage Modification Agreements"), pursuant to which the principal amount of the Debtor's obligation owing to Republic First was increased to $9,527,120.00.[8]  (The Note, First, Second, and Third Mortgages, Assignments of Rents and Mortgage Modification Agreements to which the Debtor is a party are collectively referred to as the "Loan Documents").

12.     EFL V and Republic First also entered into that certain Mortgage Modification Agreement (the "EFL V Mortgage Modification Agreement"), pursuant to which the principal amount of EFL V's obligation owing to Republic First and secured by the First EFL V Mortgage was increased to $9,527,120.00.  (The Note, EFL V Mortgages, and EFL V Mortgage Modification Agreement are hereafter collectively referred to as the "EFL V Loan Documents").

## The Debtor and EFL V Default

13.     Prior to the Petition Date, both Debtor and EFL V defaulted under the Loan Documents by, among other things, failing to make payments when due.  The last payment made by either the Debtor or EFL V under the Note was on or about September 15, 2009, which represented the September 1, 2009 interest payment.  The Note matured and the Loan became due in full on October 1, 2009 (the "Note Maturity Date").  No payments have been made since the Note Maturity Date.

---

[8] The Mortgage Modification Agreements modified the mortgages as to Units one (1), three (3), five (5), six (6), seven (7), nine (9), and twelve (12).  True and correct copies of the Mortgage Modification Agreements are attached hereto as **Exhibit H**.

#18049125 v7

## The State Court Judgment in Favor of Republic First

14.     On January 5, 2010, judgment by confession (the "Judgment") was entered

against both Debtor and EFL V and in favor of Republic First by the Court of Common Pleas of

Philadelphia County, Pennsylvania, in that civil action captioned *Republic First Bank v. EFL*

*Partners V, et al.*, January Term 2010, Case No. 100100314 (the "State Court Action"), in the

amount of $11,214,861.05, plus interest accruing at the per diem rate of $2,444.31 from January

5, 2010, plus attorneys' fees and costs.[9]

15.     To enforce the Judgment, Republic First scheduled a sheriff's sale of the EFL V

Properties for June 8, 2010 (the "Sheriff's Sale").  However, on May 3, 2010, EFL V filed a

Chapter 11 petition in this Court, thereby initiating that certain bankruptcy case captioned *In re*

*EFL Partners V*, Case No. 10-13655-ELF (the "EFL V Bankruptcy") resulting in the stay of the

Sheriff's Sale.

16.     On May 7, 2010, Republic First filed a motion for relief from the automatic stay

pursuant to section 362(d) of the Bankruptcy Code in the EFL V Bankruptcy, seeking permission

to proceed with the Sheriff's Sale.  After substantial briefing, expedited discovery, an evidentiary

hearing and oral argument, this Court (Fox, J.) granted the EFL V Stay Relief Motion on July 16,

2010, terminating the automatic stay as to the EFL V Properties.  (*See* EFL V Bankruptcy, ECF

No. 97).

17.     On September 21, 2010, EFL V voluntarily moved to dismiss the EFL V

Bankruptcy pursuant to section 1112 of the Bankruptcy Code.  (*See* EFL V Bankruptcy, ECF No.

106).  The dismissal was granted, with the consent of Republic First and the U.S. Trustee, on

September 29, 2010 (the "EFL V Dismissal Order ").  (*See* EFL V Bankruptcy, ECF No. 113).

---

[9] A copy of the docket entries in the State Court Action is attached hereto as **Exhibit I**.

## The Sale of the EFL V Properties

18.    On October 5, 2010 (the "Sale Date"), Republic First, in execution on the

Judgment, by writ of execution, caused the sale of the EFL V Properties.  The total amount due

to Republic First as of the Sale Date was $12,405,226.47.  Republic First's designee purchased

the EFL V Properties on the Sale Date for $3,500,000.00.  The Sheriff's deeds for the EFL V

Properties were recorded on December 17, 2010 and December 20, 2010.

19.    On April 4, 2011, Republic First filed its Petition to Fix Fair Market Value of

Real Properties and for Entry of Deficiency Judgment pursuant to section 8103(a) of the

Pennsylvania Judicial Code, 42 Pa. Cons. Stat. § 8103(a) (the "Petition for FMV") against EFL

V and the Debtor, among others, in the State Court Action.  (*See* Exhibit I).  The Petition for

FMV sought to: (i) set the fair market value of the EFL V Properties at $6,100,000, and (ii) enter

a deficiency judgment in the amount of $6,305,226.47.  (*See id.*).

20.    On December 19, 2011, by way of an Assignment of Judgment filed in the

Philadelphia Court of Common Pleas, Republic First assigned the Judgment to Liberty REO in

the reduced amount of $9,755,178.83, together with post-judgment interest accruing at a per

diem rate of $2,444.31 from the original judgment date of January 5, 2010 (the "Judgment

Assignment").[10]   On January 25, 2012, Liberty REO was substituted for Republic First in the

State Court Action in the Philadelphia Court of Common Pleas.  (*See id.*).  Contemporaneously,

Republic First assigned its rights and interest in all of the Loan Documents to Liberty Holdings.[11]

Accordingly, effective as of December 19, 2011, Liberty is the successor in interest to the claims

---

[10] A true and correct copy of the Judgment Assignment is attached hereto as **Exhibit J**.

[11] True and correct copies of the documents effectuating the transfer of the Loan Documents to Liberty Holdings are attached hereto in **Exhibit K.**

#18049125 v7

of Republic First against the Debtor and EFL V, among others, and, as a result, has standing to

pursue its state court rights against the Units and the EFL V Properties.

21.    On February 19, 2013, the Philadelphia Court of Common Pleas issued an Order

finding: (i) that the fair market value of the EFL V Properties is $8,400,000, and (ii) that Liberty

REO has a deficiency judgment of $4,005,226.47 against, among others, the Debtor (the

"Deficiency Judgment").  (*See id*.).

22.    On March 18, 2013, notwithstanding that Debtor had already filed its Chapter 11

petition, the Debtor filed a Notice of Appeal of the Deficiency Judgment in the State Court

Action (the "Appeal").  As the Debtor admitted at the March 19, 2013 section 341 meeting, the

Appeal violates the automatic stay under section 362 of the Bankruptcy Code and consequently

is void.  Nonetheless, the Appeal remains pending.

## The Debtor's Lack of Equity in the Units

23.    As of the Petition Date, Liberty holds a claim of $4,005,226.47 against the

Debtor.  (*See* ECF No. 22, Schedule D).  The Debtor's Schedule D also discloses several

hundred thousand dollars in additional secured claims against the Units on an individual or

collective basis.  Liberty avers in good faith, pursuant to the attached Self-Contained Appraisal

Report (the "Good Faith Appraisal"), that the Units have a collective value of approximately

$2,870,000.[12]

## RELIEF REQUESTED

24.    By this Motion, Liberty seeks the entry of an order (i) granting it relief from the

automatic stay imposed by section 362(a) of the Bankruptcy Code, to permit it to exercise all of

---

[12] A true and correct copy of the Good Faith Appraisal is attached hereto as **Exhibit L**.

its rights and remedies under applicable law, the Loan Documents and the Deficiency Judgment

in connection with the Units, or, alternatively, (ii) dismissing this Chapter 11 Case.

## BASIS FOR RELIEF

**I.    Granting Liberty Relief from the Automatic Stay is Warranted Under 11 U.S.C.
§ 362(d)(1), (2) and (3)**

25.    Liberty should be granted relief from the automatic stay to pursue its state court

rights because: (1) pursuant to section 362(d)(3), it is impossible for the Debtor to put forth a

plan of reorganization that can be confirmed and Debtor is unable to make interest payments to

Liberty, (2) pursuant to section 362(d)(1), Liberty's collateral is not being adequately protected,

and (3) pursuant to section 362(d)(2), the Debtor lacks equity in the Units and the Units are

unnecessary for reorganization.

**A.    Liberty Should be Granted Relief from the Stay
Pursuant to Section 362(d)(3)**

26.    This Chapter 11 Case is a single asset real estate case ("SARE") as defined by

section 101(51B) of the Bankruptcy Code.  Indeed, the Debtor's Schedules clearly indicate that

the Spruce Street Property constitutes Debtor's sole asset.  (*See* ECF No. 22, Schedule A).  The

Spruce Street Property, of which the Units are a substantial part, is a single property or project,

other than residential real property with fewer than four residential units, which generates

substantially all of the gross income of the Debtor, who is not a family farmer, and on which no

substantial business activity is being conducted by the Debtor other than the business of

operating the real property and activities incidental thereto.  It is beyond refute that this Chapter

11 Case is a SARE case.  11 U.S.C. § 101(51B)

27.    As such, this Court is required by section 362(d)(3) of the Bankruptcy Code to lift

the automatic stay unless Debtor can satisfy one of two requirements: (i) file a plan having a

reasonable possibility of being confirmed within a reasonable time, or (ii) commence making

interest payments to its secured creditors.  *See* § 362(d)(3).  The Debtor is clearly unable to satisfy either of these requirements and, accordingly, relief should be granted pursuant to section 362(d)(3).

> **1.    The Debtor Cannot File a Plan Having a Reasonable Possibility of Being Confirmed Within a Reasonable Time.**

28.    In order to confirm a Chapter 11 plan, at least one impaired class must vote to accept the plan.  11 U.S.C. § 1129(a)(10).  In this Chapter 11 Case, no impaired class of creditors will accept any plan that the Debtor might propose by the requisite statutory majorities delineated in section 1126 of the Bankruptcy Code.

29.    Liberty is an undersecured creditor, because the amounts due to it under the Loan Documents and/or the Deficiency Judgment substantially exceed the fair market value of the Units, whether the Good Faith Appraisal value or the value provided by Debtor in Schedule A is used.  As a result, Liberty's claim against the Debtor would be bifurcated into a secured claim and an unsecured deficiency claim.  *See* 11 U.S.C. § 506(a).

30.    Liberty's unsecured deficiency claim dwarfs the other unsecured claims listed in the Debtor's Schedule F, the largest being approximately $100,000.00.  Moreover, Liberty's secured claim is also much larger than any of the other secured claims listed in the Debtor's Schedule D.  Consequently, Liberty's secured and unsecured claims would dominate their respective classes and therefore would control the voting of those classes.  Since no plan of reorganization proposed by the Debtor could provide Liberty with the recovery it is entitled to under the Deficiency Judgment, Liberty would vote against any plan proffered by the Debtor, thereby rendering confirmation impossible under section 1129 of the Bankruptcy Code.

31.    Further, in order for a Chapter 11 plan to be confirmed, Debtor would, at a minimum, have to make monthly payments to Liberty in an amount sufficient to satisfy its

secured claim, plus interest.  §§ 1129(a)(7), (b)(2)(A)(i) and (iii); *see In re Stone & Webster, Inc.*, 286 B.R. 532, 545 (Bankr. D. Del. 2002) (holding that for best interest of creditors test of section 1129(a)(7) to be met, dissenting creditor must receive at least as much as it would receive in a Chapter 7 liquidation); *In re Edgewater Motel, Inc.*, 85 B.R. 989, 997 (Bankr. E.D. Tenn. 1988) (to satisfy section 1129(a)(7), plan must provide for payment of present value of claim of secured creditor holding mortgage on debtor's real estate); *In re Gene Dunavant & Son Dairy*, 75 B.R. 328, 335 (M.D. Tenn. 1987) (best interest of creditors test requires payments of interest to dissenting secured creditors at the market rate for loans of similar risk and duration on similar security).

32.    It is evident from Debtor's own filings that it will be impossible for Debtor to satisfy its section 1129(a)(7) obligations to Liberty, let alone pay Chapter 11 expenses, U.S. Trustee costs, or other creditors.  The Debtor's sole income is the collection of rent from the Units; however, due to the Assignments of Rents, which grant Liberty an absolute right to the rents on the Units, as well as the purported assignment of rents granted to creditor TD Bank on Units eight and eleven (the "TD Assignment"),[13] whatever limited income Debtor is receiving from the Units cannot be used by the Debtor to service its debts or make plan payments.

33.    It is clearly impossible that Debtor will ever be able to meet its section 1129(b)(7) obligations to Liberty, let alone pay other creditors and administrative expenses in these proceedings.  Thus, there is no reasonable prospect of plan confirmation within a reasonable amount of time.

---

[13] TD Bank's counsel informed counsel to Liberty of the TD Assignment at the first meeting of creditors on March 19, 2013.

#18049125 v7

### 2.    The Debtor Cannot Commence Making Payments to Liberty.

34.    Though the filing of the Chapter 11 Case affords the Debtor certain protections under the Bankruptcy Code, it cannot change the reality of its underlying financial situation. Here, the Debtor has not made payments on the amounts due under the Note since the Note Maturity Date, which was several years ago.  Nor can the Debtor service its other debts as they come due post-petition.  Indeed, the Debtor has not paid its real estate taxes on the Units since 2008.  (See ECF No. 22, Schedule D).

35.    Moreover, as aforementioned, the Assignments of Rents prevent the Debtor from utilizing the rents from the Units to service its debts, because such rents constitute cash collateral pledged to secured creditors.  As this is a SARE case, the Debtor has no alternative source of income.  Because the Debtor has not been able to make debt service payments and will not be able to commence making post-petition payments to Liberty, the Debtor also fails the second prong of the stay relief test for a SARE case.  As such, section 362(d)(3) mandates stay relief.

### 3.    Stay Relief Pursuant to Section 362(d)(3) Should be Ordered Immediately.

36.    It would be entirely futile to allow the Debtor ninety days to propose a plan when it is a certainty today that no such plan could be confirmed.  Any such delay would greatly prejudice Liberty, yet accomplish nothing for the Debtor or its other creditors.

37.    Stay relief is appropriate under section 362(d)(3) now, to the same extent that it would be at any point in the next ninety days.  The Debtor is not generating revenue sufficient to service its debts and will not do so in the foreseeable future, particularly given Liberty's Assignments of Rents.

38.    As admitted by Debtor at the first meeting of creditors, this case was filed solely to inhibit Liberty's execution on the Deficiency Judgment.  Strikingly, the Debtor concedes in its

Amended Petition that no funds will be available to unsecured creditors in this Chapter 11 Case.

Any delay in the granting of stay relief to see if the Debtor can propose a confirmable plan or

resume making payments under the Note would be a futile exercise.  Consequently, Liberty

should be granted immediate stay relief.

**B.      Liberty is Also Entitled to Stay Relief Under
Sections 362(d)(1) and (2).**

39.      Even if Liberty were not entitled to stay relief under the SARE provisions of the

Bankruptcy Code, it would still be entitled to stay relief pursuant to sections 362(d)(1) and (2),

which state:

> (d)      On request of a party in interest and after notice and a hearing, the
> court shall grant relief from the stay provided under subsection (a) of this
> section, such as by terminating, annulling, modifying or conditioning such
> stay—
>
> (1)      for cause, including the lack of adequate protection of an
> interest in property of such party in interest;
>
> (2)      with respect to a stay of an act against property . . . , if—
>
> (A)      the debtor does not have an equity in such property;
> and
>
> (B)      such property is not necessary to an effective
> reorganization.

**1.      Section 362(d)(1).**

40.      Liberty is entitled to stay relief under section 362(d)(1) for cause, including

because its interests in the Units are not adequately protected.

41.      The Bankruptcy Code does not define "cause" for section 362(d)(1) purposes,

leaving courts to consider what constitutes cause based on the totality of the circumstances in

each particular case. *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997) (citing

#18049125 v7

*Trident Assocs. v. Metropolitan Life Ins. Co. (In re Trident Assocs.)*, 52 F.3d 127 (6th Cir. 1995)); *In re Izzi*, 295 B.R. 754, 761 (E.D. Pa. 2003) (citing *Baldino*, 116 F.3d at 90).

42.     The Eastern District of Pennsylvania has not adopted a rigid test for determining when a creditor has established cause to warrant relief from the automatic stay.  Instead the cases recognize that the bankruptcy court's exercise of discretion in resolving motions for relief for cause must appropriately consider the policies underlying the Bankruptcy Code as well as the competing interests of the creditor, debtor, and the other parties in interest.  That is, each request for relief for cause must be considered on its own facts.  *Koken v. Reliance Grp. Holdings, Inc. (In re Reliance Grp. Holdings, Inc.)*, 273 B.R. 374, 407 n.58 (Bankr. E.D. Pa. 2002) (internal citations omitted).  However, some courts within the Third Circuit have adopted a helpful three-factor test to determine whether sufficient "cause" to justify stay relief is present given the totality of the circumstances:  (i) whether any great prejudice to the debtor (or estate) will result from granting stay relief; (ii) whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs hardship to the debtor; and (iii) whether the creditor has a probability of prevailing on the merits.  *See, e.g.*, *American Airlines, Inc. v. Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, 152 B.R. 420, 424 (Bankr. D. Del. 1993).

43.     The Debtor has the burden of proof on all of these issues.  § 362(g); *In re 1025 Associates, Inc.*, 106 B.R. 805, 810 (Bankr. D. Del. 1989).

44.     When the facts concerning the Units are analyzed in accordance with these three factors, it becomes clear that ample "cause" exists for relief from the stay under section 362(d)(1).  First, the Debtor will suffer no "great prejudice" if the stay is lifted to permit Liberty to exercise its rights and remedies under the Loan Documents and applicable law, because the Debtor has no equity interest in the property.  "'Equity' has been defined in the case law to mean

-14-

the 'difference between the property value and the total amount of liens against the property.'"

*In re Reice*, 88 B.R. 676, 679 (Bankr. E.D. Pa. 1988) (quoting *In re 6200 Ridge*, 69 B.R. 837,

842 (Bankr. E.D. Pa. 1987)).  Whether taking Liberty's Good Faith Appraisal or the value placed

on the Units by the Debtor in its Schedule A, the liens on the Units identified in Debtor's

Schedule D substantially exceed the value of the Units.  (ECF No. 22, Schedule D).  Indeed, as

discussed above, Liberty's Deficiency Judgment alone substantially exceeds the value of the

Units.  Not surprisingly, the Debtor admitted in its Amended Petition that unsecured creditors

will not receive a distribution in this case.  Consequently, it is apparent that the exercise of

Liberty's rights and remedies will not result in any depletion of estate assets or prejudice to

unsecured creditors.

45.    Second, while the Debtor would suffer no genuine hardship if the stay were lifted,

Liberty is suffering considerable hardship as the result of the maintenance of the stay.  The

Debtor is not making payments on the Note, and has not done so in several years.  Moreover, as

aforementioned, the Chapter 11 Case is simply the latest costly dilatory effort that the Debtor and

its partners and related entities, including EFL V, have forced Liberty, and its predecessor

Republic First, to endure simply to obtain repayment on the Note.  Real estate taxes are

admittedly not being paid and it is unknown whether or not the insurance on the Units is current.

Overall, it is clear that Liberty's financial condition is being seriously strained and its collateral

value is not being maintained.

46.    Finally, the third and final factor determining "cause"—likelihood of success on

the merits—weighs heavily in favor of granting stay relief to Liberty.  Without doubt, the Loan

Documents and applicable case law entitle Liberty to the relief requested.  Simply put, the

totality of the circumstances plainly requires stay relief.

### 2.    Section 362(d)(2).

47.    Liberty is similarly entitled to relief from the stay under section 362(d)(2), because (a) the Debtor has no equity in the Units, and (b) the Units are not necessary to an effective reorganization.

48.    It is the Debtor's burden to establish that the Units are "necessary to an effective reorganization." § 362(d)(2)(B), (g).  "What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization that is in prospect." *United Sav. Assoc. v. Timbers of Inwood Forest Assocs.,* 484 U.S. 365, 375-376 (1988).

49.    There is no prospect for an effective reorganization in this Chapter 11 Case.  First, as discussed above, there can be no impaired class of claims that would vote to accept any plan proposed by the Debtor.  Second, the Debtor's sole payment stream from the Units is subject to the Assignments of Rents, which precludes the Debtor from making sufficient plan payments to Liberty or any other creditor.  Further, Debtor has not and cannot pay its property taxes[14] and it certainly cannot market and sell any of the Units.  An effective reorganization is simply an impossibility.

50.    It is one thing for a business enterprise to seek bankruptcy protection with a realistic prospect for effectuating a reorganization in process, but it is a far different thing for this SARE Debtor to attempt a "hail-Mary" restructuring with no valid revenue stream and an inability to fund a Chapter 11 plan.  For these reasons, Liberty is also entitled to relief from the automatic stay under 11 U.S.C. § 362(d)(2).

---

[14] Debtor may also be in default under its property insurance policy.

#18049125 v7

**II.     Cause is Present Warranting Dismissal of Debtor's Chapter 11 Case, because
Debtor did not File its Petition for Relief in Good Faith**

51.     This Court should dismiss the Chapter 11 Case for "cause," pursuant to section

1112(b)(1) of the Bankruptcy Code, because the Debtor did not file its petition with the requisite

good faith.  *See* 11 U.S.C. § 1112(b)(1).  First, this Chapter 11 Case essentially involves a two

party dispute with Liberty arising out of Debtor's failure to perform its obligations under the

Loan Documents.  The Spruce Street Property, which is entirely encumbered by mortgage liens

held by Liberty and others, including TD Bank, constitutes the Debtor's only asset.  Other than

Liberty, the Debtor has few other creditors and Liberty's claim dwarfs all other claims.  Second,

by Debtor's own admission (at the section 341 meeting), Debtor commenced this Chapter 11

Case as a litigation tactic so as to stay Liberty's liquidation of the Deficiency Judgment by

executing upon the Spruce Street Property.  Finally, there is no possibility that Debtor will be

able to reorganize.  As set forth above, given Liberty's position and claim in this Chapter 11

Case, Debtor will be unable to obtain acceptance of a Chapter 11 plan by an impaired class and

is unable to provide Liberty with the plan treatment to which it is entitled under the Bankruptcy

Code.  What is more, Debtor's operations consist solely of collecting rent from tenants at the

Spruce Street Property, and given Liberty's properly perfected Mortgages and Assignments of

Rents, said rent constitutes Liberty's cash collateral that cannot be used absent Liberty's consent.

52.     Section 1112(b)(1) of the Bankruptcy Code provides that "[T]he court shall

convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter,

whichever is in the best interests of creditors and the estate, for cause unless the court determines

that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of

creditors and the estate."  § 1112(b)(1).  The decision of whether to dismiss a Chapter 11

proceeding pursuant to this statutory authority rests within the "'sound discretion of the

bankruptcy court.'" *In re Corinthian, LLC*, 440 B.R. 97, 102 (Bankr. E.D. Pa. 2009) (quoting *In re Brown*, No. 36506SR, 2005 Bankr. LEXIS 1989, at *2 (Bankr. E.D. Pa. Mar. 31, 2005)). Once the movant satisfies its initial burden of demonstrating that cause exists to dismiss a Chapter 11 proceeding, the burden of proof shifts to the debtor to show that it falls within "unusual circumstances" making dismissal inappropriate. *In re Ramreddy, Inc.*, 440 B.R. 103, 112-13 (Bankr. E.D. Pa. 2009) (quoting *DCNC North Carolina I, LLC v. Wachovia Bank, N.A.*, No. 09-3775, No. 09-3776, 2009 U.S. Dist. LEXIS 93046, at *4 (E.D. Pa. Oct. 5, 2009)). However, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005) (the "BAPCPA Amendments") amended section 1112 to limit the Court's discretion to refuse to dismiss a case upon a finding of "cause" to do so. *Nester v. Gateway Access Solutions, Inc. (In re Gateway Access Solutions, Inc.)*, 374 B.R. 556, 560 (Bankr. M.D. Pa. 2007).

53.    In determining whether the requisite "cause" is present warranting dismissal of a Chapter 11 case, the court is not limited to the specific grounds itemized in section 1112(b)(4), but may consider additional factors. *In re Business Info. Co.*, 81 B.R. 382, 385 (Bankr. W.D. Pa. 1988) (internal citations omitted). Indeed, it is well-settled that a debtor's lack of good faith in filing a Chapter 11 petition establishes "cause" for dismissal. *Sante Fe Mineral, Inc. v. Bepco, L.P. (In re 15375 Mem'l Corp.)*, 589 F.3d 605, 618 (3d Cir. 2009) (citing *NMSBPCSLDHB, L.P. v. Intergrated Telecom Express, Inc. (In re Intergrated Telecom Express, Inc.)*, 384 F.3d 108, 119-20 (3d Cir. 2004) (holding that at its most fundamental level, the requirement that a Chapter 11 petition be filed in good faith ensures that the Bankruptcy Code's careful balancing of interests is not undermined by petitioners whose aims are antithetical to the basic purposes of bankruptcy)); *see also In re DCNC North Carolina I, LLC*, 407 B.R. 651, 661 (Bankr. E.D. Pa.

-18-

2009) (holding that good faith is an implied requirement for filing and maintaining a Chapter 11

case such that conversion or dismissal may be ordered in the absence of good faith (citing *In re*

*SGL Carbon Corp.*, 200 F.3d 154, 160-62 (3d Cir. 1999))).

54.    Making a determination of whether a Chapter 11 petition was filed in bad faith

requires a "fact-intensive inquiry" in which the court will examine the totality of the

circumstances. *15375 Memorial*, 589 F.3d at 618 (internal citations and quotations omitted).  In

connection with such inquiry, the courts have considered multiple factors including the

following:  (i) whether the debtor has few or no unsecured creditors; (ii) whether there have been

previous bankruptcy filings by the debtor or related entities; (iii) whether the pre-petition

conduct by the debtor has been improper; (iv) whether the filing permits the debtor to evade or

delay court orders; (v) whether there are few debts to non-moving creditors; (vi) whether the

petition was filed on the eve of foreclosure; (vii) whether the foreclosure property is the major

asset of the debtor; (viii) whether the debtor has an ongoing business or employees; (ix) whether

there is no possibility of reorganization; (x) whether the debtor's income is insufficient to

operate; (xi) whether there was no pressure from non-moving creditors; (xii) whether the

reorganization essentially involves resolution of a two-party dispute; (xiii) whether the corporate

debtor was formed and received title to its assets immediately before the petition; and

(xiv) whether the debtor filed solely to obtain the protection of the automatic stay.  *In re*

*Stingfree Technologies Co.*, 427 B.R. 337, 352 (E.D. Pa. 2010) (quoting *In re SB Properties,*

*Inc.*, 185 B.R. 198, 205 (E.D. Pa. 1995)).  The factors relevant to this Chapter 11 Case all favor

dismissal.

55.    As Debtor asserts in the Schedules, Liberty's claim comprises ninety-two percent

(92%) of all secured claims and eighty-eight percent (88%) of all claims of every nature in this

#18049125 v7

Chapter 11 Case.  Other than with respect to Liberty, the number of creditors and the amounts of

their claims are minimal.  Indeed, the Debtor only scheduled $219,383.16 in unsecured debt in

this Chapter 11 Case, an amount that on its face, given the size of Liberty's claim, does not

support the time and expense of attempting to reorganize in Chapter 11.  Likewise, on the asset

side of Debtor's financial ledger, Debtor concedes in the Schedules that it has no unencumbered

assets with which to operate, and that its sole asset is Debtor's ownership interest in the Spruce

Street Property, which is entirely pledged as collateral to Debtor's secured creditors.  Similarly,

Debtor's entire income source is cash collateral in which Liberty and other secured creditors

possess valid and perfected liens.  It is difficult to imagine a better example of "cause," or the

absence of "good faith" warranting dismissal, than is present in this case.  *See, e.g.*, *Primestone*

*Inv. Partners L.P. v. Vornado PS, L.L.C. (In re Primestone Investment Partners L.P.)*, 272 B.R.

554, 558 (D. Del. 2002) (dismissal for lack of good faith was appropriate where case was

essentially a two party dispute between a debtor with a single asset and a secured creditor

holding a security interest in that asset); *In re Shar*, 253 B.R. 621, 636 (Bankr. D. N.J. 1999)

(generally, where Chapter 11 reorganization involves essentially a two party dispute that is

resolvable in state court, dismissal for cause is warranted); *In re Ravick Corp.*, 106 B.R. 834, 844

(Bankr. D. N.J. 1989) (same).

56.    The timing of Debtor's commencement of this Chapter 11 Case, as well as the

fact that Debtor's affiliate EFL V also previously filed bankruptcy to stay the same litigation that

prompted this Debtor's filing, also supports dismissal for cause.  As Debtor itself conceded at the

section 341 meeting, Debtor commenced this Chapter 11 Case as a litigation tactic.  Once the

Deficiency Judgment was entered in the State Court Action, Debtor knew that Liberty's next step

would be to liquidate same by foreclosing upon the Spruce Street Property.  As such, Debtor

entered Chapter 11 solely to impede Liberty's efforts to attempt to salvage value from the Loan that Debtor has failed to repay.

57.    Such practice mirrors the machinations of Debtor's affiliate, EFL V, who also sought bankruptcy protection in a SARE case to attempt to evade Liberty's judgment.  Given this maneuver previously employed by EFL V (who is a co-defendant with Debtor in the State Court Action and who is a co-borrower under the Loan), Debtor's bankruptcy tactic is inherently suspect and wholly fails to satisfy the standard of good faith.  *See 15375 Memorial*, 589 F.3d at 620 (protection of the automatic stay is not a valid justification for a Chapter 11 filing; rather, it is a consequential benefit of an otherwise good faith filing; a debtor's desire to avail itself of such protection cannot establish good faith; where the timing of Chapter 11 filing is such that there can be no doubt that the primary, if not sole, purpose of the filing was a litigation tactic, the petition may be dismissed as not being filed in good faith); *In re Midwest Properties of Shawano, LLC*, 442 B.R. 278, 290-91 (Bankr. D. Del. 2010) (debtors did not demonstrate that their cases were filed in good faith where cases were filed after automatic stays had been lifted in previous cases and upon the eve of foreclosure in state court, and timing of filings indicated that debtors' intent was to block secured creditors' state court actions and to move them to bankruptcy court); *In re Park Timbers, Inc.*, 58 B.R. 647, 651-52 (Bankr. D. Del. 1985) (dismissal warranted where case filed to evade foreclosure).

58.    Finally, this Chapter 11 Case should be dismissed because there is absolutely no possibility that Debtor will be able to reorganize.  Debtor has no operations other than collecting rents.  It has no income apart from those rents which are all pledged as collateral to secured creditors.  It has no assets other than the fully encumbered Spruce Street Property.  As set forth above on pages ten (10) through twelve (12), there is no reasonably possible scenario whereby

Debtor will be able to satisfy the Bankruptcy Code's requirements attendant to plan confirmation over Liberty's objection, which Liberty, of course, would vigorously pursue.  In this situation, both section 1112(b) of the Bankruptcy Code as well as the practical realities of this case require that this Chapter 11 Case be dismissed for cause as a bad faith filing.  *See In re 4C Solutions, Inc.*, 289 B.R. 354, 366 (Bankr. C.D. Ill. 2003) ("Perhaps the clearest case of bad faith [for dismissal purposes] is where the debtor files Chapter 11 knowing that there is no chance to reorganize the business and hoping merely to stave off the evil day when creditors take control of the assets." (citing *In re James Wilson Assocs.*, 965 F.2d 160, 170 (7th Cir. 1992))); *North Carolina I*, 407 B.R. at 664 (chapter 11 debtor's inability to effectuate plan, by itself, provides "cause" for dismissal or conversion); *In re 865 Centennial Ave. Assocs. Ltd. P'ship.*, 200 B.R. 800, 809-15 (Bankr. D. N.J. 1996) (reasonable likelihood of rehabilitation was not shown where debtor had no cash flow or source of income and claims against debtor's property exceeded property's value).

[intentionally left blank]

#18049125 v7

WHEREFORE, Liberty respectfully requests: (i) the entry of an Order granting relief from the automatic stay to permit Liberty to exercise its rights and remedies in connection with the Spruce Street Property or, in the alternative, (ii) the entry of an order dismissing this Chapter 11 Case; and (iii) such other and further relief in favor of Liberty as the Court deems just and proper.

Dated:  April 9, 2013

Respectfully submitted,

PEPPER HAMILTON LLP

/s/ Erik L. Coccia
Erik L. Coccia, Esq.
Francis J. Lawall, Esq.
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA 19103
Telephone:  (215) 981-4394
Facsimile:  (215) 981-4750
E-mail: cocciae@pepperlaw.com
          lawallf@pepperlaw.com

- and -

James C. Carignan, Esq.
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE  19899-1709
Telephone: (302) 777-6500
Facsimile: (302) 421-8390
Email: carignanj@pepperlaw.com

*Attorneys for Liberty Philadelphia REO, LP
and Liberty RE Asset Holdings, LLC*

#18049125 v7